**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MARY KAY BECKMAN,

    Plaintiff(s),

v.

MATCH.COM,

    Defendant(s).

2:13-CV-97 JCM (NJK)

## ORDER

Presently before the court is defendant Match.com, LLC's motion to dismiss. (Doc. # 6). Plaintiff Mary Kay Beckman responded (doc. # 9), and Match.com replied (doc. # 11).

### I.    Background

This action arises out of the brutal attack of plaintiff, Mary Kay Beckman, by a Wade Mitchell Ridley, a man whom she met on Match.com.[1] Plaintiff seeks redress for the "horrific harms she suffered as a result of the false information portrayed by [Match.com]." (Doc. # 1, 1:25-26).

In late August 2010, plaintiff subscribed to Match.com's service and set up an online profile. (*Id.* at ¶¶ 9-10). Shortly thereafter, plaintiff began interacting with another Match.com user, Ridley. (*Id.* at ¶ 11). On or about September 26, 2010, plaintiff and Ridley had their first date in Las Vegas, Nevada. (*Id.* at ¶ 13).

---

[1] Match.com operates an online dating service at http://match.com. Match.com enables subscribers to search for and find people with whom they might wish to enter into a personal relationship.

**James C. Mahan**
**U.S. District Judge**

1   After this initial meeting, plaintiff and Ridley continued their dating relationship for approximately 10 days. (*Id.* at ¶ 14). On October 3, 2010, they had their last physical meeting and plaintiff ended the relationship. (*Id.*). In the following days, Ridley sent plaintiff numerous threatening and harassing text messages, to which she did not respond. (*Id.* at ¶ 15).

On January 21, 2011, Ridley ambushed plaintiff at her residence. (*Id.* at ¶ 16). Ridley repeatedly stabbed and kicked plaintiff in the attack. (*Id.* at ¶¶ 17-18). As a result of the attack, plaintiff suffered severe physical injuries requiring several hospitalizations and surgical procedures. (*Id.* at ¶¶ 23-30).

On January 18, 2013, plaintiff filed a complaint in this court. Plaintiff asserts five causes of action against Match.com: (1) negligent misrepresentation; (2) deceptive trade practices pursuant to 15 U.S.C. § 45(a)(1); (3) negligence (failure to warn); (4) negligence; and (5) negligent infliction of emotional distress. (*Id.* at ¶¶ 31-71). Plaintiff seeks nearly $10,000,000 in compensatory and punitive damages, in addition to attorneys' fees and costs. (*Id.* at 10:13-17).

Match.com brings the instant motion on the basis that plaintiff's complaint fails to state a claim under Rule 12(b)(6). Match.com seeks dismissal of all of plaintiff's claims with prejudice.

**II.     Legal standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 1949.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* (internal quotations omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

**II. Discussion**[2]

**A. Deceptive trade practices, 15 U.S.C. § 45(a)(1) (claim two)**

Match.com argues that plaintiff's claim under 15 U.S.C. § 45(a)(1) fails because plaintiff lacks standing. *See* 15 U.S.C. § 45(a)(2) (stating "The Commission is hereby empowered and

---

[2] Match.com's motion requests the court to take judicial notice of Match.com's "Terms of Use Agreement" and "Safety Tips". (Doc. # 6, Exs. A & B). Plaintiff opposes the request on the ground that the documents are "subject to a reasonable dispute." (Doc. # 9, 9:10-11). However, in Match.com's initial request, it stated that "[c]onsideration of these materials is not necessary for a decision on this motion." (Doc. # 6, 6 n.1). On this basis, the court declines to take judicial notice of exhibits A & B.

**James C. Mahan
U.S. District Judge**

- 3 -

1  directed to prevent persons, partnerships, or corporations . . . from using . . . unfair or deceptive acts
2  or practices in or affecting commerce."); *see Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981)
3  (holding that Congress conferred the "initial remedial power solely in the Federal Trade
4  Commission."); *see also Hoekstra v. State Farm Gen. Ins. Co.*, C 12-06328 CRB, 2013 WL 556798,
5  at *1 (N.D. Cal. Feb. 12, 2013).

6       Plaintiff retorts that she alleges this as a negligence *per se* claim and concedes that this claim
7  is not clearly pleaded in the complaint. Although plaintiff does not cite any cases holding that 15
8  U.S.C. § 45–that is, Section 5 of the Federal Trade Commission Act– can be used as a vehicle to
9  pursue a state-law negligence claim, the court finds it premature to address whether amendment to
10  this claim should be permitted. *See* FED. R. CIV. P. 15(a)(2); *see also* Local Rule 15-1.

11       Failing to plead this claim as a negligence *per se* cause of action and there being no private
12  right of action to enforce § 45(a)(1), the court finds that plaintiff's claim for deceptive trade practices
13  is appropriately dismissed for failure to state a claim. Plaintiff's claim under 15 U.S.C. § 45(a)(1)
14  is dismissed with prejudice.

15       **B.**    **State law causes of action (claims one, three, four, and five)**

16       The court analyses whether plaintiff's claim are barred by the Communications Decency Act.
17  Ultimately, the court finds that defendant is immune from suit due to the statute. In an abundance
18  of caution, the court goes to the merits of plaintiff's claims and finds that they fail to state a claim
19  pursuant to Federal Rule of Civil Procedure 12(b)(6).

20       **i.**    **Title 47 U.S.C. § 230, the Communications Decency Act, bars plaintiff's**
21            **state law causes of action**

22       Match.com argues that all of plaintiff's state-law claims are barred by § 230 of the
23  Communications Decency Act, 47 U.S.C. § 230 (the "CDA"). Match.com construes plaintiff's
24  claims as seeking to hold it "liable for enabling Ridley to post a profile on its website that plaintiff
25  ultimately saw and responded to." (Doc. # 6, 2:22-23).

26  . . .
27  . . .
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

> By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions–such as deciding whether to publish, withdraw, postpone or alter content–are barred.

*Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). A website operator qualifies for CDA immunity when: (1) it is an "interactive computer services" provider; (2) it is not an "information content provider" with respect to the conduct at issue; and (3) the plaintiff seeks to hold the website operator liable on account of information originating from a third-party user of its services. *See* 47 U.S.C. § 230; *see also Zeran*, 129 F.3d at 330.

**(1)     Interactive computer services provider**

The CDA defines "interactive computer service" as an "information service . . . that provides or enables computer access by multiple users to a computer server . . . ." 47 U.S.C. § 230(f)(2). Match.com, as an operator of a website that allows people to join and view other users' profiles, is an interactive services provider. *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1121 (9th Cir. 2003), *see also Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 722 (N.D. Ohio 2007) *aff'd*, 551 F.3d 412 (6th Cir. 2008); *see also Doe v. MySpace, Inc.*, 528 F.3d 413, 415 (5th Cir. 2008).

**(2)     Not an information content provider**

An "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). To qualify for CDA immunity, Match.com must not be an "information content provider" in respect to the challenged conduct.

Whether a website is an "information content provider" turns on whether the website "created or developed" the particular information or content alleged to have resulted in the harm at issue. *Carafano*, 339 F.3d at 1125. The fact that a website may have created certain features that enabled

a user to post the content in question is irrelevant. *See, e.g.*, *id.* (stating that even the use of a detailed questionnaire to elicit statements was insufficient to establish that a website operator was an "information content provider'); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007) ("At best, [the plaintiff's] allegations establish that [the defendant's] conduct may have made it marginally easier for others to develop and disseminate misinformation. That is not enough to overcome Section 230 immunity."); *Doe v. Bates*, 5:05-CV-91-DF-CMC, 2006 WL 3813758, at *17 (E.D. Tex. Dec. 27, 2006) (acknowledging that "immunity analysis turns on who was responsible for the specific harmful material at issue, not on whether the service provider was responsible for the general features and mechanisms of the service . . . .").

Here, plaintiff does not allege that Match.com created Ridley's profile or authored the communications from Ridley. Thus, Ridley, not Match.com, was the "information content provider" for the material provided on his user profile on Match.com's website. That is, Match.com is not an "information content provider" with respect to Ridley's user profile.

### (3) Information originating from a third-party user

To satisfy the third prong, and thus be afforded immunity under the CDA, the plaintiff must seek to hold the defendant liable for information originating from a third-party user of the defendant's services.

Match.com argues that plaintiff is suing because it "published on its website Ridley's profile–content that led to their meeting online, to their communicating with each other offline, and to their dating." (Doc. # 6, 11:6-7). Match.com also argues that "plaintiff's fundamental charge against Match.com is that it didn't do enough to prevent her from meeting Ridley." (Doc. # 11:4-5). This is certainly true of plaintiff's claims for negligence and negligent infliction of emotional distress.

In plaintiff's claims for negligence and negligent infliction of emotional distress, plaintiff argues that Match.com failed "to protect her from individuals trolling the website to further criminal activity" by "exposing Plaintiff to a serial murderer who used the website as a vessel to facilitate attacks on unsuspecting women," (doc. # 1, ¶¶ 58-59); and "by exposing Plaintiff to a serial killer

who used Defendant's service to facilitate a brutal attack and attempted murder upon Plaintiff" (*id.* at ¶ 67).[3]

The basis of these negligence claims is irreducibly based on content posted by a third party. That is, plaintiff's claims for negligence and negligent infliction of emotional distress seek to hold Match.com liable for its decision to publish Ridley's user profile, *see Zeran*, 129 F.3d at 330; *see also Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 727 (N.D. Ohio 2007) *aff'd*, 551 F.3d 412 (6th Cir. 2008), which is barred under the CDA.

The conduct of publishing a user's profile is within the ambit of protection afforded under the CDA as these claims challenge Match.com's role as a publisher of third-party content. In particular, these claims challenge Match.com's decisions and actions with respect to screening and removing such content, and thus are barred. Therefore, Match.com is entitled to immunity under the CDA for plaintiff's claims for negligence and negligent infliction of emotional distress with prejudice.

However, the court finds it necessary to piecemeal plaintiff's remaining negligence claims. Her claims for negligent misrepresentation and negligence (failure to warn) are alleged in the complaint in a way that attempts to focus on Match.com's alleged failure to warn users of the inherent dangers of using the website. These two claims attempt to focus specifically on Match.com and not on the profile of Ridley.

The problem with plaintiff's attempt to focus on Match.com's alleged failure to warn or alleged negligent misrepresentation is that all of Match.com's conduct must trace back to the publication of third-party user content or profiles. Match.com is a website that publishes dating profiles. There is nothing for Match.com to negligently misrepresent or negligently fail to warn about other than what a user of the website may find on another user's profile on the website. Plaintiff may attempt to focus the alleged wrongdoing on Match.com, but what plaintiff is actually alleging is that she was eventually harmed because of third-party content published by Match.com on its website.

---

[3] Plaintiff asserts that Ridley killed a woman and attacked another–hence the allegation that he is a serial murderer. (*See* doc. # 9, 3:17-19).

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    An illustrative example is *Doe v. MySpace, Inc.*, 474 F.Supp.2d 843, 848 (W.D. Tex. 2006) *aff'd*, 528 F.3d 413 (5th Cir. 2008). In *MySpace*, the plaintiffs argued that they were not challenging any particular third-party content, but rather, MySpace's failure to keep minors off its website or to keep predators from using the site to communicate with minors. *Id.* at 848-49. There, the district court found this "artful pleading to be disingenuous," stating that:

> It is quite obvious the underlying basis of Plaintiffs' claims is that, through postings on MySpace, [the sexual predator] and [the minor] met and exchanged personal information which eventually led to an in-person meeting and the sexual assault of [the minor]. If MySpace had not published communications between [the minor] and [the sexual predator], including personal contact information, Plaintiffs assert they never would have met and the sexual assault never would have occurred. No matter how artfully Plaintiffs seek to plead their claims, the Court views Plaintiffs' claims as directed toward MySpace in its publishing, editorial, and/or screening capacities.

*Id.* at 849. In *MySpace*, plaintiffs' claims for negligence and gross negligence were challenging the publication of the minor user's profile–which goes to content and thus is within the ambit of immunity afforded under the CDA. The same reasoning applies in this case. Plaintiff's claims for negligent misrepresentation and negligence (failure to warn) are actually challenging the publication of the profile of a third-party user and criminal, Ridley. Plaintiff's claims, like those in *MySpace*, actually go to a website's publication of a third-party user's profile, which is clearly immune under the CDA, and not to any alleged wrong or failure on the part of Match.com.

The court in *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 727 (N.D. Ohio 2007) *aff'd*, 551 F.3d 412 (6th Cir. 2008), reached a similar conclusion. The claims were based on the publication of third-party content masked as a failure to warn or negligent misrepresentation on the part of the website. In *Sexsearch.com*, plaintiff met another user on the website who claimed she was at least 18 years old. *Id.* at 722. After meeting and having sexual relations with her, the plaintiff was arrested for unlawful sexual conduct with a minor. *Id.* Plaintiff later sued SexSearch.com alleging that but for this introduction to the minor on its website–and her claim that she was at least 18 years old–he would not have had sex with her. *Id.* 722-23. The district court held that the CDA barred all claims seeking to hold Sexsearch.com "liable for its publication of third-party content and harms flowing from the dissemination of that content." *Id.* 727.

James C. Mahan
U.S. District Judge

- 8 -

1    In *Sexsearch.com*, plaintiff's claims for negligent misrepresentation and failure to warn[4] were barred by the CDA because plaintiff was seeking to hold SexSearch.com liable for its publication of third-party content and harms flowing from the dissemination of that content. Here, plaintiff is alleging that she would not have been harmed had Match.com warned her that some of the third-party user's with profiles were dangerous. Plaintiff is really alleging that Match.com's publication of Ridley's profile is ultimately what caused the attack.

The situation is identical to *Sexsearch.com* and *MySpace*. Plaintiff is alleging that the website did not warn, protect, or misrepresented the safety of its website. The problem is that Match.com's website published only dating profiles of other users. The only thing that Match.com could warn about or misrepresent is the content on the users with third-party profiles.

Plaintiff argues that her claims for negligent misrepresentation and negligence (failure to warn) are not directed at the publication of third-party profiles, but rather at Match.com's failure to implement basic safety measures to prevent criminals and other dangerous people from communicating with users of Match.com that are genuinely attempting to start a relationship. Plaintiff is basically asserting she never would have met or been attacked by Ridley had Match.com warned her or did not negligently misrepresent a profile or the safety of its website. The court finds that these claims are actually directed at Match.com's publishing, editorial, and/or screening functions–all of which are clearly entitled to immunity under the CDA.

Congress enacted the CDA for several policy reasons, including "to promote the continued development of the Internet and other interactive computer services . . . ." 47 U.S.C. § 230(b)(1). To ensure that website operators and other interactive computer services would not be crippled by lawsuits arising out of third-party communications, the Act provides interactive computer services with immunity. *See MySpace, Inc.*, 474 F.Supp.2d at 847. This immunity is for causes of action that would make service providers liable for information originating with a third-party user of the service. *See Zeran.*, 129 F.3d at 330. The court finds that plaintiff's claims for negligent misrepresentation

---

[4] These particular causes of action were amongst other causes of action the court found to be barred by the CDA. *See SexSearch.com*, 502 F. Supp. 2d at 724.

**James C. Mahan**
**U.S. District Judge**

- 9 -

and negligence (failure to warn) actually seek to hold Match.com liable for information originating with Ridley on the website. Match.com is immune pursuant to the CDA immunity.

### ii. Negligent misrepresentation (claim one)

For the tort of negligent misrepresentation, Nevada has adopted the Restatement (Second) of Torts definition. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (citing *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978)). Under this theory of liability:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977); *see also Bill Stremmel Motors, Inc.*, 575 P.2d at 940.

Furthermore, any claim of "fraud or mistake" must be alleged "with particularity." FED. R. CIV. P. 9(b). A complaint alleging fraud or mistake must include allegations of the time, place, and specific content of the alleged false representations and the identities of the parties involved. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam).

Here, Match.com argues that plaintiff's claim for negligent misrepresentation fails to satisfy the heightened pleading standard under Rule 9(b). Match.com contends that plaintiff has not identified a single "specific misstatement made by Match.com, let alone when, where, and how any such misstatement was made." (Doc. # 6, 13:2-4). Further, Match.com argues that this claim fails because any alleged misstatement made to plaintiff was not made in connection with a business transaction as plaintiff pleads that she joined Match.com "for the purpose[] of establishing a relationship with another individual" and that she "wanted to experience the type of healthy and loving relationship the website claimed to foster." (Doc. # 1, ¶¶ 8, 10). Match.com characterizes this as a "quintessentially personal purpose." (Doc. # 6, 13:21).

Plaintiff responds that her allegations meet all the elements for negligent misrepresentation and her claim is in connection with a business transaction because she paid membership fees.

James C. Mahan
U.S. District Judge

- 10 -

1  The court finds that plaintiff's negligent misrepresentation claim was in the course of
2  business and was a business transaction. While Match.com asserts that plaintiff used Match.com's
3  services for personal reasons, this characterization is inapposite here. To permit Match.com to avoid
4  a negligent misrepresentation claim because its services are necessarily personal in nature would be
5  to shroud Match.com in immunity from this claim based on the nature of services it sells. Surely, a
6  defendant cannot dodge this type of claim just because the business it is in has a "quintessentially
7  personal purpose."

8  However, because this cause of action sounds in fraud, plaintiff's allegations must meet Rule
9  9(b)'s standards. Plaintiff fails to do so here. Plaintiff has not pleaded with sufficient particularity
10 to put Match.com on adequate notice of what negligent misrepresentations were made. *See Kearns*
11 *v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *In re Stac Elecs. Sec Litig.*, 89 F.3d
12 1399, 1405 (9th Cir. 1996)(citation omitted)). For this reason, plaintiff's negligent misrepresentation
13 claim fails.

14  **iii.  No duty or breach any duty: negligence (claims three and four)**

15  To establish a negligence claim, a plaintiff must satisfy four elements: (1) the existence of
16 a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages. *Sanchez ex rel. Sanchez*
17 *v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). Whether a duty of care exists is "a
18 question of law" for the court to decide. *Id.* In general, "no duty is owed to control the dangerous
19 conduct of another or to warn others of the dangerous conduct." *Id.* (citation omitted). An exception
20 exists when (1) there is a special relationship between the parties; and (2) the harm created by the
21 defendant's conduct is foreseeable. *Id.* at 1280-81.

22  **a.  No special relationship**

23  Nevada law recognizes that there is a duty to aid others when there is a special relationship
24 between the parties, such as innkeeper-guest, teacher-student, or employer-employee. *Lee v. GNLV*
25 *Corp.*, 22 P.3d 209, 212 (Nev. 2001). The existence of a special relationship is premised on the
26 notion that "the ability of one of the parties to provide for his own protection has been limited in
27 some way by his submission to the control of another." *Sparks v. Alpha Tau Omega Fraternity, Inc.*,
28

**James C. Mahan**
**U.S. District Judge**

- 11 -

255 P.3d 238, 245 (Nev. 2011) (citation omitted). Without this degree of control, no special relationship exists. *Id.*

Match.com asserts that plaintiff has failed to state a claim for her negligence claims because Match.com had no legal duty to prevent the brutal attack. Plaintiff responds that a special relationship has arisen because she was a "paying subscriber" as alleged in the complaint. (*See* doc. # 1, ¶ 32). However, merely being a "paying subscriber" is insufficient to establish a special relationship.

Here, the brutal attack occurred offline several months after plaintiff and Ridley had ended their dating relationship that began by communicating over the website. The court finds that plaintiff's factual allegations do not support her claim that a special relationship existed between herself and Match.com. Plaintiff cites no authority, and the court is aware of none, that supports her position that Nevada courts would find a special relationship between a provider of online dating services and subscribers. In fact, a district court has held that, under Texas law, a website operator's relationship with a paying website subscriber is not special, but instead an "ordinary commercial contract relationship." *Robinson v. Match.com, LLC*, 3:10-CV-2651-L, 2012 WL 3263992, at *18 (N.D. Tex. Aug. 10, 2012) (citation omitted). Given Nevada's case law on special relationships in other contexts, the court finds this holding persuasive.[5]

Having found that a special relationship does not exist between plaintiff and Match.com, and since both a special relationship and a foreseeability are necessary to establish a duty under these circumstances, the court need not address whether the harm allegedly created by Match.com's

---

[5] "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted). "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." *Id.* (quotation omitted).

James C. Mahan
U.S. District Judge

- 12 -

conduct was foreseeable. *See Sanchez*, 221 P.3d at 1280-81.[6] Thus, there being no duty to plaintiff–her negligence claims are dismissed with prejudice.[7]

### iv.  Negligent infliction of emotional distress (claim five)

To establish a claim for either intentional or negligent infliction of emotional distress, "the plaintiff needs to show that there was 'extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress.'" *State v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 152, 42 P.3d 233, 241 (Nev. 2002) (quoting *Shoen v. Amerco, Inc.*, 747, 896 P.2d 469, 476 (Nev. 1995)). Extreme and outrageous conduct is that which is "outside all possible bounds of decency" and is intolerable in civil life. *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 25 (Nev. 1998); *see also Knight v. Climbing Magazine*, 3:11-CV-0146-LRH-RAM, 2012 WL 6627821, at *3 (D. Nev. 2012).

Match.com argues that plaintiff has not met her burden in pleading this claim. Specifically, Match.com takes issue with plaintiff's failure to plead "extreme and outrageous conduct" on Match.com's behalf.

Plaintiff responds that her allegations include Match.com deliberately misrepresenting "the dangers associated with membership to the extreme detriment, and at times near death, of its members." (Doc. # 9, 16:7-8). Plaintiff further states that Match.com takes "no responsibility for its members' safety or well-being" and "puts profits before the safety of its members." (*Id.* at 16:24-17:1).

First, plaintiff's statements contained in her response that are not alleged in her complaint are not "relevant for Rule 12(b)(6) purposes." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Further, even if the court considers plaintiff's statements in her response, none of the conduct alleged rises to the level "extreme and outrageous conduct." Plaintiff has not

---

[6] Further, even if the court did address whether the harm created by the defendant's conduct was foreseeable, the court finds that plaintiff has not alleged *any* facts that Match.com knew or should have known that Ridley was a potential danger to others.

[7] Dismissal with prejudice of plaintiff's negligence claims does *not* include her negligent misrepresentation claim or her negligent infliction of emotional distress claim.

1  identified a particular representation misstating the dangers associated with membership; and even
2  if she did, failure to make a general disclosure that dating presents risk does not rise to the level of
3  conduct that is "outside all possible bounds of decency," *Maduike*, 953 P.2d at 25. Therefore, this
4  claim is dismissed on the basis that plaintiff has failed to allege "extreme and outrageous conduct."

### III.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Match.com, LLC's motion to dismiss (doc. # 6) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT plaintiff's claim for violation of deceptive trade practices (claim two) is dismissed for failure to state a claim because plaintiff lacks standing to assert this claim. This claim is dismissed with prejudice.

IT IS FURTHER ORDERED THAT plaintiff's claim for negligence (failure to warn) (claim three) is dismissed because Match.com is immune from such claims under the CDA and for failure to state a claim because there is no special relationship between plaintiff and Match.com. This claim is dismissed with prejudice.

IT IS FURTHER ORDERED THAT plaintiff's claim for negligence (claim four) is dismissed because Match.com is immune from such claims under the CDA and because there is no special relationship between plaintiff and Match.com. This claim is dismissed with prejudice.

IT IS FURTHER ORDERED THAT plaintiff's claim for negligent infliction of emotional distress (claim five) is dismissed because Match.com is immune from such claims under the CDA and because plaintiff has failed to allege "extreme and outrageous conduct" on defendant's behalf. This claim is dismissed with prejudice.

IT IS FURTHER ORDERED THAT plaintiff's claim for negligent misrepresentation (claim one) is dismissed because Match.com is immune from such claims under the CDA and plaintiff has

**James C. Mahan**
**U.S. District Judge**

1 | not plead with sufficient particularity to satisfy the pleading requirements of Rule 9(b). This claim
2 | is dismissed with prejudice.

   DATED May 29, 2013.

   _____
   UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 15 -